UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SILVERHORSE RACING, LLC,**

       **Plaintiff,**

v.                                                   Case No:   6:16-cv-53-Orl-22KRS

**FORD MOTOR COMPANY,**

       **Defendant.**

## ORDER

This cause comes before the Court on Defendant Ford Motor Company's ("Ford") Motion to Dismiss (Doc. No. 9), to which Plaintiff SilverHorse Racing, LLC ("SHR") responded in opposition, (Doc. No. 12). For the reasons that follow, the Court will deny Ford's motion to dismiss.

### I.   BACKGROUND

SHR brings this single-count action against Ford for tortious interference with business relationships. (Doc. No. 2 at p. 7). In 2004, motivated by his passion for Ford Mustangs, Joseph Marcello Canitano ("Canitano") established SHR as a business that specializes in customizing and manufacturing Ford Mustang aftermarket parts. (*Id*. ¶¶ 13–14). Canitano is the sole owner of SHR. (*Id*. ¶ 5). In 2008, Canitano moved his expanding business to a new facility and began developing relationships with nationwide dealers in Ford Mustang aftermarket parts. (*Id*. ¶ 15). From 2007–2008, SHR alleges that Ford Racing began to use some of SHR's parts on Ford Racing vehicles.[1]

---

[1] The identity of Ford Racing and its relationship to Ford is unclear from the Complaint. Plaintiff begins mentioning Ford Racing without an introduction in Paragraph 17 of the Complaint and mentions it throughout.

(*Id.* ¶ 17–18). In February 2010, SHR and Ford had a close relationship and began negotiations for SHR to directly produce its parts as a factory-installed option for Ford Mustangs. (*Id.* ¶ 19). Unfortunately, SHR could not pursue the opportunity due to a lack of financial resources. (*Id.*) However, SHR continued to manufacture its aftermarket parts for Ford vehicles. (*Id.*)

SHR's ongoing relationship with Ford ended abruptly on April 3, 2013, when SHR received a cease-and-desist letter from Ford. (*Id.* ¶ 24). The cease-and-desist letter warned SHR that it was using Ford's trademarks on SHR's products and in SHR's advertisements without Ford's authorization. (*Id.* ¶ 25). Additionally, Ford demanded a royalty for all of SHR's products embellished with one of Ford's trademarks—a unique design utilizing the letters "GT," where the top of the G connects with the top of the T. (*Id.* ¶ 29, *see* Ex. B). SHR alleges that throughout 2014, Ford "embarked on a campaign to contact all retailers and distributors of SHR products and advise them that SHR products engraved with the initials GT were 'counterfeit goods' and subject to criminal forfeiture and/or criminal prosecution." (*Id.* ¶ 31). Many of SHR's dealers and distributors refused to accept additional products from SHR. (*Id.* ¶ 32). Thereafter, SHR brought this lawsuit alleging that Ford intentionally interfered with SHR's relationships with its retailers and distributors. (*Id.* ¶ 42). On January 25, 2016, Ford filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss SHR's Complaint arguing that Ford is immune from liability under the *Noerr-Pennington* doctrine. (Doc. No. 9).

## II.    LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain

'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

### III.   ANALYSIS

Ford moves to dismiss SHR's Complaint on the grounds that Ford is entitled to immunity from suit under the *Noerr-Pennington* doctrine, which is in part derived from the First Amendment right to petition. (Doc. No. 9 at p. 2). SHR disputes the applicability of the *Noerr-Pennington* doctrine outside of the antitrust context where it was first developed. (Doc. No. 12 at p. 5). Even if the *Noerr-Pennington* doctrine is applicable, SHR argues that the "sham exception" applies and abrogates Ford's immunity. (*Id.* at p. 15).

The *Noerr-Pennington* doctrine was first recognized in the "context of concerted petitions for anti-competitive legislation." *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 99–100 (2d Cir. 2000). The landmark cases, *Eastern Railroad Presidents Conference v. Noerr-Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), establish that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558 (11th Cir. 1992). The *Noerr-*

*Pennington* doctrine was later "extended to immunize from antitrust liability attempts to influence adjudicative bodies." *Id.* (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 140 (1980)). The Supreme Court has emphasized the First Amendment interests inherent in the doctrine, stating that "it would be destructive of rights of association and petition to hold that groups with common interests may not, without violating antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes . . . ." *Cal. Motor Transp. Co.*, 404 U.S. at 510–511.

A number of court decisions expand the scope of *Noerr-Pennington* immunity by applying it in areas outside of antitrust law. While the Eleventh Circuit Court of Appeals has not addressed the applicability of *Noerr-Pennington* in other contexts, the Supreme Court has applied the doctrine outside of the antitrust context in a few instances. *See N.A.A.C.P. v. Claiborne Hardware*, 458 U.S. 886, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982) (granting first amendment immunity to a nonviolent business boycott seeking to vindicate economic equal rights); *see also*, *Bill Johnson's Restaurants Inc v. N.L.R.B.*, 461 U.S. 731, 742–43, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983) (immunizing employer's lawsuit from NLRB injunction under the right to petition). In *BE & K Constr. Co. v. N.L.R.B.*, the Supreme Court reasoned that the principles of statutory construction embodied in the *Noerr-Pennington* doctrine apply in other statutory contexts, and the Court concluded that the National Labor Relations Act does not impose liability on an employer for unsuccessful prosecution of lawsuits that were brought for the purpose of retaliating against workers, but were not objectively baseless. 536 U.S. 516, 527, 122 S. Ct. 2390, 2397, 153 L. Ed. 2d 499 (2002).

There is a clear trend among the circuit courts to extend *Noerr-Pennington* immunity to other areas of law where the purposes of the First Amendment right to petition are implicated. *See*

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 793 F.3d 85, 87 (D.C. Cir. 2015) (applying *Noerr-Pennington* to NLRA claim, stating "employer conduct that would otherwise be illegal may be 'protected by the First Amendment when it is part of a direct petition to government."); *see also*, *Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) (applying *Noerr-Pennington* to claims for tortious interference and RICO violations)*; Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ("In light of *BE & K*'s application of *Noerr-Pennington* to the NLRA, we conclude that the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause."); *IGEN Intern., Inc. v. Roche Diagnostics, GmbH*, 335 F.3d 303 (4th Cir. 2003) (applying *Noerr-Pennington* doctrine to claims for tortious unfair competition and breach of contract); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999) (extending *Noerr-Pennington* immunity to state tort claims based on the same petitioning activity as federal antitrust claims); *Hufsmith v. Weaver*, 817 F.2d 455 (8th Cir. 1987) (applying *Noerr-Pennington* to a claim for tortious interference with contract); *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 649–650 (7th Cir. 1983) (*Noerr-Pennington* "has been applied to protect the First Amendment right to petition against claims of tortious interference with business relationships.").

District courts in the Eleventh Circuit have rarely addressed *Noerr-Pennington* outside of the antitrust context. However, the majority of the district courts that have addressed the issue have applied *Noerr-Pennington* in non-antitrust cases. *See Rolex Watch U.S.A, Inc. v. Rainbow Jewelry, Inc.*, No. 12-21437-CIV, 2012 WL 4138028, at *3 (S.D. Fla. Sept. 19, 2012) (applying *Noerr-Pennington* to unfair trade practices claim); *Atico Intern USA, Inc. v. LUV N' Care, Ltd.*, No. 09-60397-CIV, 2009 WL 2589148, at *2 (S.D. Fla. Aug. 19, 2009) (applying *Noerr-Pennington* to

tortious interference claim); *Lynn v. Amoco Oil Co.*, 459 F. Supp. 2d 1175, 1189-90 (M.D. Ala. 2006) ("Although the *Noerr-Pennington* doctrine applies to antitrust conspiracies, the principles of law on which it is based are not restricted to the field of antitrust.").[2]

Not surprisingly, SHR relies on the lone circuit court decision not extending *Noerr-Pennington* immunity to matters outside of the antitrust context. In *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, the Tenth Circuit held that it was not appropriate to apply *Noerr-Pennington* to a tortious interference claim because the doctrine was limited to the antitrust area. 208 F.3d 885, 892 (10th Cir. 2000). However, in a decision eight years later, the Tenth Circuit has been favorable to applying *Noerr-Pennington* immunity outside the realm of antitrust because of the doctrine's roots in the right to petition:

> Rather, in non-antitrust cases, immunity derives solely from the First Amendment right to petition. *Id*. Thus, as we determined in *Scott*, we apply *Noerr-Pennington* immunity to cases outside the antitrust context with caution. *Scott*, 216 F.3d at 914. Yet, as we acknowledged in *Cardtoons, L.C.*, 208 F.3d at 889, and *Scott*, 216 F.3d at 914, numerous federal and state courts have applied *Noerr-Pennington*-like immunity to state tort claims. Imposing tortious interference liability pursuant to state law could very well impinge a defendant's First Amendment rights to petition the government for redress. *See Scott*, 216 F.3d at 914 ("'[I]t is hard to see any reason why, as an abstract matter, . . . common law torts . . . might not in some of their applications be found to violate the First Amendment.'" (quoting *Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C. Cir. 1995))). Accordingly, ProLease was entitled to plead and prove that it was immune from liability under the First Amendment for its tortious interference.

*Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp.*, 297 F. App'x 773, 778–79 (10th Cir. 2008).

---

[2] SHR cites to one Southern District of Florida case holding that *Noerr-Pennington* does not apply outside of antitrust law. *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-Civ-TORRES, 2007 WL 473273, at *6 (S.D. Fla. Feb. 8, 2007). However, that decision does not discuss the circuit court decisions in the area. The Court finds the above-cited circuit court decisions to be more persuasive.

This Court finds persuasive the decisions of the abovementioned majority of circuit courts extending *Noerr-Pennington* immunity outside of the antitrust context when the First Amendment right to petition is implicated. "[T]he distinction between antitrust and non-antitrust cases is not relevant to the *Noerr-Pennington* analysis, given the Supreme Court's focus on the First Amendment right to petition, rather than a statutory construction of the Sherman Act." *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 838, 898 (D. Minn. 2012) (citing *Cal. Motor Transp. Co.*, 404 U.S. 508)). Therefore, upon a proper showing, Ford may be entitled to such immunity.

Now that the Court has determined that an analogous *Noerr-Pennington* immunity applies outside of the antitrust context, the Court must determine whether Ford's conduct, as alleged by SHR, is protected under it at the motion to dismiss stage. SHR's tortious interference claim is based on Ford's actions of sending a cease-and-desist letter to SHR due to SHR's use of Ford's registered trademarks, and Ford's advising and threatening SHR's retailers and distributors. (*See* Doc. No. 2). A number of circuit courts, including the Eleventh Circuit, have expressly extended *Noerr-Pennington* immunity to threats of litigation and pre-litigative activity, including sending cease-and-desist letters and publicity campaigns aimed at protecting intellectual property rights. *See McGuire Oil Co.*, 958 F.2d at 1560; *see also*, *Coastal States Marketing*, 694 F.2d at 1367 ("[I]t would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning."); *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1310 (8th Cir.1985) ("The right to petition means more than simply the right to communicate directly with the government, [therefore] protection under the doctrine necessarily includes those activities reasonably and normally attendant to effective petitioning.") (internal quotation marks omitted)); *PODS Enters.,*

*Inc. v. ABF Freight Sys., Inc.*, No. 8:11-cv-84-T-33MAP, 2011 WL 4948397, at *5 (M.D. Fla. Oct. 17, 2011) ("[P]re-litigative activity such as sending cease-and-desist letters is also immunized.").

At this stage in the litigation, the Court does not have enough information to hold as a matter of law that Ford's conduct is immunized. Certainly, a registered trademark owner enjoys immunity for sending a cease-and-desist letter before commencing litigation to enforce its valid trademark rights. *See PODS Enters., Inc.*, 2011 WL 4948397, at *5. However, SHR alleges that Ford engaged in more than merely sending a cease-and-desist letter. SHR alleges that Ford contacted SHR's dealers and distributors and advised them that all SHR products engraved with Ford's "GT" trademark were counterfeit goods subject to criminal forfeiture and criminal prosecution. (Doc. No. 2 ¶ 31). It remains to be determined whether Ford's contact with SHR's dealers and distributors and perceived threats of criminal prosecution is conduct "reasonably and normally attendant" to effective petitioning. *See*, *Coastal States Marketing*, 694 F.2d at 1367. It is plausible that Ford's conduct falls outside the realm of activities reasonably taken in anticipation of litigation. If so, the right to petition would not be implicated by Ford's actions. This determination is better suited for summary judgment with a more fully-developed record.

Additionally, SHR argues that the sham exception applies because Ford is engaging in "sham litigation." (Doc. No. 12 at p. 15). To abrogate *Noerr-Pennington* immunity as conduct attendant to a sham litigation, a litigant must establish "(1) the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; and (2) the party bringing the allegedly baseless suit did so with a subjective motivation . . . to interfere directly with the business relationships of a competitor." *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005). Litigation is not "objectively baseless" if there was probable cause to bring a lawsuit. *Id*. Thus, the plaintiff must "prove that the defendant lacked probable cause to

institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 62, 113 S. Ct. 1920, 1929, 123 L. Ed. 2d 611 (1993). However, whether or not a lawsuit is a "sham" does not depend on a plaintiff's success on the merits of its trademark infringement claims. *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 894 (D. Minn. 2012) (citing *BE & K Const. Co*., 536 U.S. at 531–32 (stating that the doctrine "protect[s] petitioning whenever it is genuine, not simply when it triumphs.")).

As an initial matter, the Court need not determine whether the sham exception applies because it is unclear at this stage whether Ford's conduct constitutes pre-litigative activity necessary to invoke *Noerr-Pennington* immunity. Nonetheless, SHR alleges that Ford contacted and threatened SHR's retailers and distributors by misrepresenting to them that all of SHR's products bearing the letters "GT" are counterfeit, and Ford threatened them with criminal forfeiture and criminal prosecution. (Doc. No. 2 ¶¶ 31, 32, 42). However, Ford continued to purchase SHR's aftermarket parts even after issuing these warnings. (*Id.* ¶ 33). Additionally, SHR alleges that Ford's claims to the "GT" initials are "disingenuous and species" because Ford expressly disclaimed rights in the letters "GT" apart from Ford's unique design (how the mark is shown in the trademark application). (*Id*. ¶ 35, Ex. B). At this stage of the litigation, taking these allegations as true, the Court finds SHR's allegations sufficient under a notice pleading standard. Therefore, the Court concludes that, as alleged, Ford lacked an objective basis to threaten SHR's retailers and distributors with trading in counterfeit goods and criminal prosecution. This conduct could plausibly constitute "objectively baseless" threats sufficient for a tortious interference claim against Ford. Whether SHR can ultimately establish the application of the "sham litigation"

exception to strip Ford of potential *Noerr-Pennington* immunity may be raised again at summary judgment or trial.

## IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendant Ford Motor Company's Motion to Dismiss (Doc. No. 9), filed on January 25, 2016, is **DENIED**.

2. Defendant Ford Motor Company **SHALL FILE** an answer to Plaintiff's Complaint within fourteen days.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on April 27, 2016.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties